**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NANCY R. MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 1253 |
| | ) | |
| FLEXPOINT FUNDING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nancy R. Murray, on behalf of herself and a proposed class of individuals similarly situated, alleges that defendant Flexpoint Funding Corporation ("Flexpoint") has willfully violated her rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Ms. Murray alleges that Flexpoint, without her permission, accessed her consumer report to determine, for its own purposes, her creditworthiness. Sometime after February 15, 2004, Flexpoint sent Ms. Murray a flyer announcing low mortgage rates (even for individuals with "less than perfect credit") and offering a free "benefits analysis." The flyer also stated that the recipient was "already pre-qualified ... for a new home loan" with Flexpoint. The flyer urges the recipient to either call Flexpoint's toll-free number or visit its website.

Ms. Murray alleges that Flexpoint's conduct in accessing her consumer report violates FCRA as the flyer does not constitute a

"firm offer of credit." Ms. Murray also alleges that the flyer violates FCRA as it does not include certain required disclosures in a "clear and conspicuous" manner. 15 U.S.C. § 1681m(d). Ms. Murray alleges that these violations were committed in a willful manner. 15 U.S.C. § 1681n. Flexpoint moves to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). I deny that motion, for the reasons stated below.

On a motion to dismiss, I accept all well-pleaded allegations in the complaint as true, *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997), and draw all reasonable inferences in favor of the plaintiff. *Strasburger v. Bd. of Educ.,* 143 F.3d 351, 359 (7th Cir. 1998). I grant the motion only if the plaintiff can prove no set of facts to support the allegations in her claim. *Id.*

Flexpoint argues that the complaint must be dismissed because the standards relied on by Ms. Murray to state her claim were not established until the decision in *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004). Flexpoint argues that it cannot have willfully violated standards not in existence when the flyer was sent, and that under prior precedent, the flyer would not have violated FCRA standards. In order for Flexpoint's access of consumer reports to be lawful, the flyer must meet both criteria: it must be a "firm offer" and it must contain the required disclosures in a "clear and conspicuous" manner. Ms. Murray argues that Flexpoint fails on both criteria.

2

A "firm offer" of credit constitutes a permissible reason for an entity to access a individual's consumer report without her knowledge or consent. 15 U.S.C. § 1681b. A "firm offer" is defined within FCRA as "any offer of credit ... to a consumer that will be honored" if the individual meets specific criteria based on the information in her consumer report. 15 U.S.C. § 1681a(1). The offer may also be conditioned on other specified grounds. *Id.* Prior to the decision in *Cole*, a "firm offer" was generally interpreted as any offer of credit to a consumer that the offeror intended to honor. *See, e.g. Tucker v. Olympia Dodge*, No. 03 C 976, 2003 WL 21230604, at *2 (N.D. Ill. Jun. 2, 2003)(Kennelly, J.)("Tucker I"); *Tucker v. New Rogers Pontiac, Inc.*, No. 03 C 862, 2003 WL 22078297, at *3 (N.D. Ill. Sept. 10, 2003)(Pallmeyer,J.)("Tucker II").

A factual question remains as to which standard applies to the flyer at question here. *Cole* was decided on November 19, 2004. The only dates provided in the complaint state that the flyer was received by Ms. Murray sometime after February 15, 2004, and that the "offer" in the flyer would expire on December 11, 2004. While it is likely that the flyer was indeed sent prior to the decision in *Cole*, I cannot state that it was as a matter of law.

Furthermore, even if the pre-*Cole* standard applies, I cannot say as a matter of law that the flyer met that standard. It is not clear from the face of the flyer what, exactly, the offer is. In

3

*Tucker I*, the offer was for an auto loan with a minimum amount of $1,000. In *Tucker II*, the offer was for an auto loan in the minimum amount of $24,995. Here, there does not appear to be even an offer that specific. The flyer states that the recipient has been preapproved for a home loan, but does not state in what amount or at what interest rate. While a rate of 5.75 percent is mentioned elsewhere in the flyer, that rate is hedged with language such as "subject to change without notice" and "other rates and terms available." An offer may be vague and meet the pre-*Cole* standard, but there must clearly *be* an offer.

Questions also remain as to Flexpoint's state of mind when it designed and sent the flyer, regardless of which standard was in force. Such questions are generally more appropriate for a jury's determination, not for disposition on a motion to dismiss. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993)(such questions difficult to resolve on summary judgment).

Ms. Murray also alleges that the disclaimers required by FCRA do not appear on the flyer in a "clear and conspicuous" manner. 15 U.S.C. § 1681m(d). The required disclaimers are listed on the flyer. However, they appear on the back of the flyer, separate from any language constituting the "offer." The disclaimers are in a very small font, much smaller than any font used on the front of the flyer. Finally, the only reference on the front of the flyer

4

to the disclaimers is a short sentence at the bottom, in a smaller type: "See reverse side for important information." That sentence follows others, in the same small type, which refer to potential increases and changes in the rates and terms of the proposed loan. Flexpoint acknowleges that before the decision in *Cole*, courts generally looked to the interpretation of "clear and conspicuous" in the Truth in Lending Act, 15 U.S.C. § 1632(a), as little analysis under FCRA existed. *See, e.g., Tucker II*, 2003 WL 22078297 at \*4. Under that standard, disclosures must be evaluated "from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." *Id.*

Allegations that disclosures are not "clear and conspicuous" state a claim under FCRA. *Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 805 (7th Cir. 2001). The font size of the disclosures alone raises issues as to whether the disclosures were "conspicuous." *See id.* ("'conspicuous' ... cannot be met as a matter of law by type disproportionately small to that in the rest of the document.") *See also Sampson v. Western Sierra Acceptance Corp.*, No. 03 C 1396, 2003 WL 21785612, at \*4 (N.D. Ill. Aug. 1, 2003)(Zagel, J.). The disclosures are also on the back of the flyer, and there is no clear reference to them on the front of the flyer. *Sampson*, 2003 WL 21785612, at \*4; *cf. Tucker II*, 2003 WL 22078297, at \*4 (noting that even though disclosures were on the

5

front side of the document, disclosures were still not "conspicuous" as a matter of law). At this stage in the proceedings, I cannot say that Flexpoint's disclosures were "clear and conspicuous." The motion to dismiss is denied.

**ENTER ORDER:**

*Elaine E Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated:      June *17* , 2005